U.S. BANKRUPTCY COURT
FLORIDA MIDDLE DISTRICT
OrlandoDIVISION



FILED
MAY 06 2011
CLERK, U.S. BANKRUPTCY
ORLANDO DIVISION

IN RE: ) CASE NO. 6:09-bk-07978-KSJ
)
    POITEVIEN, JEAN ) PETITION FOR UNCLAIMED FUNDS
)
DEBTOR (S) )
)

I, the undersigned petitioner, under penalty of perjury under the laws of the United States of America, declare (or certify, verify or state) that the following statements and information are true and correct:

1. I am petitioning to receive the total amount of $4,725.00 which is the sum of all monies deposited with the Court by the case trustee on behalf of the creditor BAC HOME LOAN SERVICING LP FKA COUNTRYWIDE.

2. Affidavit of knowledge regarding state law and personal representation requirements. I am the lawful attorney-in-fact for the creditor or successor in interest to the creditor named in paragraph 1 and I am duly authorized by the attached original power of attorney to file this application. I am aware of all pertinent state law requirements regarding being a personal representative under such powers of attorney, and acknowledge that I am solely responsible for payment of these funds to the creditor.

3. The following is the Claimant's current address, phone number, last 4 digits of Social Security Number or full Tax Identification Number of the claimant, and a brief history of the creditor from filing of the creditor's claim to present.

    The court lists the following information for this claimant:

    BAC HOME LOAN SERVICING LP FKA COUNTRYWIDE,
    GREENSPOON MARDER, PA
    TRADE CTR SOUTH - STE 700
    100 WEST CYPRESS ROAD
    FORT LAUDERDALE, FL 33309-

    That information is incomplete or no longer correct. The following is the current address, contact and telephone number:

    <u>Current Address:</u>

    Bank of America Corporation
    Attn: Karen Hartford-Polk, Assistant Vice President, Recovery Officer
    NC1-021-03-40 401 North Tryon Street
    Charlotte, NC 28255

    <u>Current Phone:</u> 800.900.9000

    <u>Tax Identification No:</u> 94-1687665

Creditors History: The claimant named above is the rightful claimant to these funds as evidenced by the attached Exhibits. The original creditor, Bank of America, N.A. transferred this claim to the BAC Home Loans Servicing LP on 12/4/2009 (document #58). The claimant, Bank of America Corporation is the parent company of both the transferor and transferee.

Bank of America Corporation acquired Countrywide Financial Corporation on July 1, 2008. On April 27, 2009 the name was changed from Countrywide Financial to Bank of America Home Loans.

Authorization to act as the claimant's agent is shown by Exhibit A. Exhibit B is a sworn affidavit of the claimant asserting entitlement to these funds. Exhibit C is from SEC Form S-4 filed by the claimant on March 27, 2008 which includes the merger agreement. Exhibit D is the announcement of the name change in press releases from the claimant and Associated Press. Exhibit E is a certificate of authority verifying the capacity of the signatory, Karen Hartford Polk to act in this matter. Exhibit F identifies the signatory by her business card and photo ID. An original business card is attached to this exhibit.

The following attached Exhibits support this claim:

Exhibit A: Original Limited Power of Attorney (Authority to Act)
Exhibit B: Affidavit of Claimant
Exhibit C: Form S-4 Merger Agreement
Exhibit D: Name Change Announcement
Exhibit E: Officer's Certificate of Authority
Exhibit F: Business card & Photo Identification of signatory (personal data obscured for privacy reasons)

4. AFFIDAVIT OF SERVICE. Notice is herby given that on April 28, 2011 a copy of this fully completed document including all attachments was served on the U.S. Attorney, per 28 U.S.C., Section 2042 at the following address by U.S. Postal Service:

U.S. Attorney
Attn: Civil Procedures Clerk
400 N. Tampa Street, Ste 3200
Tampa, FL 33602

5. I understand that, pursuant to 18 U.S.C. § 152, I may be fined not more than $5,000, or imprisoned not more than five years, or both, if I have knowingly and fraudulently made any false statements in this document.

Date executed by applicant May 2, 2011 .

Michael Sullivan
Sierra Funds Recovery, Inc.
10123 Main Place Ste. B
Bothell, WA 98011-3402
425.489.2669

Attorney in Fact for
Bank of America Corporation

## NOTARY ACKNOWLEDGMENT

State of Washington          )
County of King               )

On <u>May 2, 2011</u> before me, personally appeared <u>Michael Sullivan, Sierra Funds Recovery, Inc.</u> personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that they executed the same in their authorized capacity, and that by their signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal:

*[Notary seal: Kristina L. Rydman, Notary Public, State of Washington, Commission Expires 2-19-12]*

*Kristina L. Rydman*
NOTARY PUBLIC in and for the
State of Washington, Residing in King County

# LIMITED POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, that I,

**Karen Hartford Polk, Assistant Vice President of Bank of America Corporation ("Bank of America"),** acting on behalf of Bank of America hereby appoint *Sierra Funds Recovery, Inc.* in the person of one of its principal officers, as Bank of America's lawful attorney-in-fact to seek recovery of the undistributed, unclaimed, or undelivered tenders of funds of:

**BAC HOME LOAN SERVICING LP FKA COUNTRYWIDE, In the amount of $4,725.00**

held by the United States, by a state, or by an agency or instrumentality of either, hereby revoking all previous powers of attorney in this regard to whomever granted.

Bank of America further grants the attorney authority to do whatever is necessary and proper to recover the aforementioned unclaimed funds only, as fully as it might or could do if acting through its own officers or agents, hereby confirming all that the attorney shall lawfully do or cause to be done. Nevertheless, the attorney shall have no authority to incur any financial obligation or to make any expenditure on behalf of Bank of America, other than an expenditure payable from any sums recovered by virtue of the attorney's actions.

In construing this instrument where the context so requires, the singular includes the plural. This Power of Attorney shall expire 180 days from the date hereof or upon collection of the aforementioned unclaimed funds, if earlier, unless otherwise extended by an amendment which is attached hereto.

Signed this 12 day of April, 2011.

**Bank of America Corporation**

*[signature]*

**Karen Hartford Polk, Assistant Vice President**
**Recovery Officer**

Federal Taxpayer ID 94-1687665

State of North Carolina County of Mecklenburg Date: April 12, 2011

The above-named Karen Hartford Polk, known to me to be the individual described in [and holding the position designated in] the foregoing instrument, appeared before me and acknowledged the execution thereof to be his/her free act and deed.

Before me: *[signature]*
Notary Public

(Notary Seal) *[Kristen A. Yaroma, Notary Public, Mecklenburg Co., NC]*

My commission expires: 3/28/2014

Bank of America
FLMBK $4,725.00
SFR10979-MS

**EXHIBIT 2 A**
page 1 of 1

UNITED STATES BANKRUPTCY COURT
FLORIDA MIDDLE BANKRUPTCY COURT

In Re: ) Case No: 6:09-bk-07978-KSJ
)
)
POITEVIEN, JEAN ) AFFIDAVIT OF CLAIMANT
)
)
Debtor(s) )

I, <u>Karen Hartford Polk, Assistant Vice President</u> of <u>Bank of America Corporation</u>, under the penalty of perjury of the laws of the United States of America, declare (or certify, verify or state) the following:

1. That Bank of America Corporation is the claimant to the unclaimed funds referenced in this application and that Bank of America Corporation, to the best of my knowledge, is the legal owner of these funds.

2. I am authorized by Bank of America Corporation to execute and deliver documents and to enter into any agreements pertaining to the recovery of unclaimed funds belonging to Bank of America Corporation or any of its entities or predecessors, held by any governmental agency.

3. Bank of America and its subsidiaries/acquisitions have numerous branch addresses, business locations and payment centers. The address's of these locations frequently changed and/or are eliminated over time. Therefore, it is overly burdensome, and may be impossible, to provide documentation to verify the specific address of record.

4. Current contact information:

Karen Hartford Polk,                    Direct: 704.387.5985
Assistant Vice President
Bank of America Corporation             Fax: 980.233.7721
401 North Tryon Street                  Emx: karen.a.hartford@bankofamerica.com
NC1-021-03-40
Charlotte NC 28255

Signed this 12 day of April, 2011

By: _____
Karen Hartford Polk, Assistant Vice President
Bank of America Corporation

---

**NOTARY ACKNOWLEDGMENT**

State of <u>North Carolina</u> County of <u>Mecklenburg</u> Date: <u>April 12</u>, 2011

The above-named Karen Hartford Polk, known to me to be the individual described in [and holding the position designated in] the foregoing instrument, appeared before me and acknowledged the execution thereof to be his/her free act and deed.

Before me: _____
Notary Public

(Notary Seal)

My commission expires: 3/29/2014

Bank of America,
FLMBK $4,725.00
SFR10979-MS

EXHIBIT B
page 1 of 1

As filed with the Securities and Exchange Commission on March 27, 2008

Registration No. 333-149204

UNITED STATES SECURITIES AND EXCHANGE COMMISSION

Washington, D.C. 20549

Amendment No. 1
to
Form S-4
REGISTRATION STATEMENT
UNDER
THE SECURITIES ACT OF 1933

# BANK OF AMERICA CORPORATION

(Exact Name of Registrant as Specified in its Charter)

| Delaware | 6021 | 56-0906609 |
|---|---|---|
| (State or other jurisdiction of incorporation) | (Primary Standard Industrial Classification Code Number) | (I.R.S. Employer Identification Number) |

Bank of America Corporate Center
100 N. Tryon Street
Charlotte, North Carolina 28255
(704) 386-5681

(Address, including Zip Code, and Telephone Number, including Area Code, of Registrant's Principal Executive Offices)

Timothy J. Mayopoulos, Esq.
Executive Vice President and General Counsel
Bank of America Corporation
Bank of America Corporate Center
100 N. Tryon Street
Charlotte, North Carolina 28255
(704) 386-7484

(Name, Address, including Zip Code, and Telephone Number, including Area Code, of Agent for Service)

With copies to:

| John C. Murphy, Jr., Esq. | Susan E. Bow, Esq. | Edward D. Herlihy, Esq. |
| Paul J. Shim, Esq. | General Counsel and Corporate Secretary | Nicholas G. Demmo, Esq. |
| Cleary Gottlieb Steen & Hamilton LLP | Countrywide Financial Corporation | Wachtell, Lipton, Rosen & Katz |
| 2000 Pennsylvania Avenue, NW | 4500 Park Granada | 51 West 52nd Street |
| Washington, DC 20006 | Calabasas, California 91302 | New York, New York 10019 |
| (202) 974-1500 | (818) 225-3000 | (212) 403-1000 |

Approximate date of commencement of the proposed sale of the securities to the public: As soon as practicable after this Registration Statement becomes effective and upon completion of the merger described in the enclosed document.

If the securities being registered on this Form are being offered in connection with the formation of a holding company and there is compliance with General Instruction G, check the following box. ☐

If this Form is filed to register additional securities for an offering pursuant to Rule 462(b) under the Securities Act of 1933, as amended, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering. ☐

If this Form is a post-effective amendment filed pursuant to Rule 462(d) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering. ☐

EXHIBIT C
page 1 of 7

The Registrant hereby amends this Registration Statement on such date or dates as may be necessary to delay its effective date until the Registrant shall file a further amendment which specifically states that this Registration

APPENDIX A

AGREEMENT AND PLAN OF MERGER

by and among

COUNTRYWIDE FINANCIAL CORPORATION,

BANK OF AMERICA CORPORATION

and

RED OAK MERGER CORPORATION

DATED AS OF JANUARY 11, 2008

EXHIBIT C
page 2 of 7

AGREEMENT AND PLAN OF MERGER

AGREEMENT AND PLAN OF MERGER, dated as of January 11, 2008 (this "Agreement"), among Countrywide Financial Corporation, a Delaware corporation ("Company"), Bank of America Corporation, a Delaware corporation ("Parent"), and Red Oak Merger Corporation, a Delaware corporation and wholly-owned subsidiary of Parent ("Merger Sub").

WITNESSETH:

WHEREAS, the Boards of Directors of Company, Parent and Merger Sub have determined that it is in the best interests of their respective companies and their stockholders to consummate the strategic business combination transaction provided for in this Agreement in which Company will, on the terms and subject to the conditions set forth in this Agreement, merge with and into, Merger Sub (the "Merger"), with Merger Sub as the surviving company in the Merger (sometimes referred to in such capacity as the "Surviving Company");

WHEREAS, prior to the Merger, Merger Sub shall be converted into a Delaware limited liability company;

WHEREAS, for federal income Tax purposes, it is the intent of the parties hereto that the Merger shall qualify as a "reorganization" under the provisions of Section 368(a) of the Internal Revenue Code of 1986, as amended (the "Code"), and this Agreement is intended to be and is adopted as a "plan of reorganization" for purposes of Sections 354 and 361 of the Code; and

WHEREAS, the parties desire to make certain representations, warranties and agreements in connection with the Merger and also to prescribe certain conditions to the Merger.

NOW, THEREFORE, in consideration of the mutual covenants, representations, warranties and agreements contained in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the parties agree as follows:

ARTICLE I

THE MERGER

1.1 The Merger. (a) Subject to the terms and conditions of this Agreement, in accordance with the Delaware General Corporation Law (the "DGCL") and the Delaware Limited Liability Company Act (the "DLLCA"), at the Effective Time, Company shall merge with and into Merger Sub. Merger Sub shall be the Surviving Company in the Merger and shall continue its existence as a limited liability company under the laws of the State of Delaware. As of the Effective Time, the separate corporate existence of Company shall cease.

(b) Parent may at any time change the method of effecting the combination (including by providing for the merger of Company and a wholly-owned subsidiary of Parent other than Merger Sub) if and to the extent requested by Parent and consented to by Company (such consent not to be unreasonably withheld or delayed); provided, however, that no such change shall (i) alter or change the amount or kind of the Merger Consideration provided for in this Agreement, (ii) adversely affect the Tax treatment of Company's stockholders as a result of receiving the Merger Consideration or the Tax treatment of either party pursuant to this Agreement or (iii) materially impede or delay consummation of the transactions contemplated by this Agreement.

1.2 Effective Time. The Merger shall become effective as set forth in the certificate of merger (the "Certificate of Merger") that shall be filed with the Secretary of State of the State of Delaware on the Closing Date. The term "Effective Time" shall be the date and time when the Merger becomes effective as set forth in the Certificate of Merger.

1.3 Effects of the Merger. At and after the Effective Time, the Merger shall have the effects set forth in the DGCL and DLLCA.

A-1

EXHIBIT C
page 3 of 7

Source: BANK OF AMERICA CORP /DE/, S-4/A, March 27, 2008          Powered by Morningstar® Document Research℠

1.4 <u>Conversion of Stock and LLC Interests.</u> At the Effective Time, by virtue of the Merger and without any action on the part of Parent, Merger Sub, Company or the holder of any of the following securities:

(a) All limited liability company interests of Merger Sub issued and outstanding immediately prior to the Effective Time shall remain issued and outstanding and shall not be affected by the Merger.

(b) All shares of common stock, par value $0.05 per share, of Company issued and outstanding immediately prior to the Effective Time (the "<u>Company Common Stock</u>") that are owned by Company, Parent or any wholly-owned subsidiary of Company or Parent (other than shares of Company Common Stock held in trust accounts, managed accounts, mutual funds and the like, or otherwise held in a fiduciary or agency capacity, that are beneficially owned by third parties (any such shares, "<u>Trust Account Common Shares</u>") and other than shares of Company Common Stock held, directly or indirectly, by Company or Parent in respect of a debt previously contracted (any such shares, "<u>DPC Common Shares</u>")) shall be cancelled and shall cease to exist and no stock of Parent or other consideration shall be delivered in exchange therefor.

(c) Subject to Section 1.4(f), each share of the Company Common Stock, except for shares of Company Common Stock owned by Company, Parent or any wholly-owned subsidiary of Company or Parent (other than Trust Account Common Shares and DPC Common Shares), shall be converted, in accordance with the procedures set forth in Article II, into the right to receive 0.1822 (the "<u>Exchange Ratio</u>") of a share of common stock, par value $0.01 per share, of Parent ("<u>Parent Common Stock</u>") (the "<u>Merger Consideration</u>").

(d) All of the shares of Company Common Stock converted into the right to receive the Merger Consideration pursuant to this Article I shall no longer be outstanding and shall automatically be cancelled and shall cease to exist as of the Effective Time, and each certificate previously representing any such shares of Company Common Stock (each, a "<u>Certificate</u>") shall thereafter represent only the right to receive the Merger Consideration and/or cash in lieu of fractional shares into which the shares of Company Common Stock represented by such Certificate have been converted pursuant to this Section 1.4 and Section 2.3(f), as well as any dividends to which holders of Company Common Stock become entitled in accordance with Section 2.3(c).

(e) Each share of 7.25% Series B Non-Voting Convertible Preferred Stock, par value $0.05 per share, of Company (the "<u>Series B Preferred Stock</u>") issued and outstanding immediately prior to the Effective Time shall be cancelled and shall cease to exist and no stock of Parent or other consideration shall be delivered in exchange therefor.

(f) If, between the date of this Agreement and the Effective Time, the outstanding shares of Parent Common Stock shall have been increased, decreased, changed into or exchanged for a different number or kind of shares or securities as a result of a reorganization, recapitalization, reclassification, stock dividend, stock split, reverse stock split, or other similar change in capitalization, an appropriate and proportionate adjustment shall be made to the Merger Consideration.

1.5 <u>Stock Options and Other Stock-Based Awards; ESPP.</u>

(a) As of the Effective Time, by virtue of the Merger and without any action on the part of the holders thereof, each option to purchase shares of Company Common Stock granted under the Amended and Restated 1993 Stock Option Plan, as amended, the 2000 Equity Incentive Plan and the 2006 Equity Incentive Plan (collectively, the "<u>Company Stock Plans</u>") that is outstanding immediately prior to the Effective Time (collectively, the "<u>Company Options</u>") shall be converted into an option (an "<u>Adjusted Option</u>") to purchase, on the same terms and conditions as applied to each such Company Option immediately prior to the Effective Time (taking into account any accelerated vesting or other rights, such as the right to surrender for cash, with respect to such Company Options in accordance with the terms thereof), the number of whole shares of Parent Common Stock that is equal to the number of shares of Company Common Stock subject to such Company Option immediately prior to the Effective Time multiplied by the Exchange Ratio (rounded down to the nearest whole share), at an exercise price per share of Parent Common Stock (rounded up to the nearest whole penny) equal to the exercise price for each such share of Company Common Stock subject to such Company Option immediately prior to the Effective Time divided by the Exchange Ratio <u>provided, further,</u> that, in the case of any Company Option to which Section 421 of the Code applies as of the Effective Time (after taking

Source: BANK OF AMERICA CORP /DE/, S-4/A, March 27, 2008

Powered by Morningstar® Document Research℠

into account the effect of any accelerated vesting thereof) by reason of its qualification under Section 422 of the Code, the exercise price, the number of shares of Parent Common Stock subject to such option and the terms and conditions of exercise of such option shall be determined in a manner consistent with the requirements of Section 424(a) of the Code.

(b) As of the Effective Time, by virtue of the Merger and without any action on the part of the holders thereof, each stock appreciation right with respect to shares of Company Common Stock granted under a Company Stock Plan that is outstanding immediately prior to the Effective Time (collectively, the "Company SARs") shall be converted into a stock appreciation right (an "Adjusted SAR") with respect to, on the same terms and conditions as applied to each such Company SAR immediately prior to the Effective Time (taking into account any accelerated vesting or other rights, such as the right to surrender for cash, with respect to such Company SARs in accordance with the terms thereof), the number of whole shares of Parent Common Stock that is equal to the number of shares of Company Common Stock with respect to which such Company SAR is subject to immediately prior to the Effective Time multiplied by the Exchange Ratio (rounded down to the nearest whole share), at a base price per share of Parent Common Stock (rounded up to the nearest whole penny) equal to the base price for each such share of Company Common Stock subject to such Company SAR immediately prior to the Effective Time divided by the Exchange Ratio.

(c) As of the Effective Time, each restricted share of Company Common Stock granted under a Company Stock Plan that is outstanding immediately prior to the Effective Time (collectively, the "Company Restricted Shares") shall, by virtue of the Merger and without any action on the part of the holder thereof, be converted into the right to receive (the "Parent Restricted Share Right"), on the same terms and conditions as applied to each such Company Restricted Share immediately prior to the Effective Time (including the same transfer restrictions taking into account any accelerated vesting of such Company Restricted Share in accordance with the terms thereof), the Merger Consideration; provided, however, that, upon the lapsing of restrictions with respect to each such Parent Restricted Share Right in accordance with the terms applicable to the corresponding Company Restricted Share immediately prior to the Effective Time, Parent shall be entitled to deduct and withhold such amounts as may be required to be deducted and withheld under the Code and any applicable state or local Tax law with respect to the lapsing of such restrictions.

(d) As of the Effective Time, each restricted share unit with respect to shares of Company Common Stock granted under a Company Stock Plan that is outstanding immediately prior to the Effective Time (collectively, the "Company RSUs") shall, by virtue of the Merger and without any action on the part of the holder thereof, be converted into a restricted share unit, on the same terms and conditions as applied to each such Company RSU immediately prior to the Effective Time (taking into account any accelerated vesting of such Company RSU in accordance with the terms thereof), with respect to the number of shares of Parent Common Stock that is equal to the number of shares of Company Common Stock subject to the Company RSU immediately prior to the Effective Time multiplied by the Exchange Ratio (rounded to the nearest whole share) (a "Parent RSU") The obligations in respect of the Parent RSUs shall be payable or distributable in accordance with the terms of the agreement, plan or arrangement relating to such Parent RSUs.

(e) As of the Effective Time, all amounts denominated in Company Common Stock and held in participant accounts (collectively, the "Company Deferred Equity Units") either pursuant to Company's 2003 Non-Employee Directors' Fee Plan, Company's 2004 Executive Equity Deferral Program or pursuant to any other nonqualified deferred compensation program or any individual deferred compensation agreements (collectively, the "Company Deferred Equity Unit Plans") shall, by virtue of the Merger and without any action on the part of the holder thereof, be converted into deferred equity units, on the same terms and conditions as applied to such Company Deferred Equity Units immediately prior to the Effective Time (taking into account any accelerated vesting of such Company Deferred Equity Units in accordance with the terms thereof), with respect to the number of shares of Parent Common Stock that is equal to the number of shares of Company Common Stock in which such Company Deferred Equity Units are denominated immediately prior to the Effective Time multiplied by the Exchange Ratio (rounded to the nearest whole share) (a "Parent Deferred Equity Unit"). The obligations in respect of the Parent Deferred Equity Units shall be payable or distributable in accordance with the terms of the Company Deferred Equity Unit Plan relating to such Parent Deferred Equity Units.

EXHIBIT C
page 5 of 7

Source: BANK OF AMERICA CORP /DE/, S-4/A, March 27, 2008

Powered by Morningstar® Document Research℠

(f) As of the Effective Time, Parent shall assume the obligations and succeed to the rights of Company under the Company Stock Plans with respect to the Company Options (as converted into Adjusted Options), the Company SARs (as converted into Adjusted SARs), the Company RSUs (as converted into Parent RSUs), the Company Deferred Equity Units (as converted into Parent Deferred Equity Units) and Company Restricted Shares (as converted into Parent Restricted Share Rights). Company and Parent agree that prior to the Effective Time each of the Company Stock Plans shall be amended, to the extent possible without requiring stockholder approval of such amendments, (i) if and to the extent necessary and practicable, to reflect the transactions contemplated by this Agreement, including the conversion of the Company Options, Company SARs, Company Restricted Shares and Company RSUs pursuant to paragraphs (a), (b), (c), (d) and (e) above and the substitution of Parent for Company thereunder to the extent appropriate to effectuate the assumption of such Company Stock Plans by Parent, (ii) to preclude any automatic or formulaic grant of options, restricted shares or other awards thereunder on or after the Effective Time (other than with respect to the dividend reinvestment feature of any such plan), and (iii) to the extent requested by Parent in a timely manner and subject to compliance with applicable law and the terms of the plan, to terminate any or all Company Stock Plans effective immediately prior to the Effective Time (other than with respect to outstanding awards thereunder). From and after the Effective Time, all references to Company (other than any references relating to a "Change in Control" of Company) in each Company Stock Plan and in each agreement evidencing any award of Company Options, Company SARs, Company Restricted Shares, Company RSUs or Company Deferred Equity Units shall be deemed to refer to Parent, unless Parent determines otherwise.

(g) Parent shall take all action necessary or appropriate to have available for issuance or transfer a sufficient number of shares of Parent Common Stock for delivery upon exercise of the Adjusted Options or the Adjusted SARs or settlement of the Parent RSUs or Parent Deferred Equity Units. All of the conversions and adjustments made pursuant to this Section 1.5, including without limitation, the determination of the number of shares of Parent Common Stock subject to any award and the exercise price of the Adjusted Options or base price of the Adjusted SARs, shall be made in a manner consistent with the requirements of Section 409A of the Code. Promptly after the Effective Time, Parent shall prepare and file with the SEC a post-effective amendment converting the Form S-4 to a Form S-8 (or file such other appropriate form) registering a number of shares of Parent Common Stock necessary to fulfill Parent's obligations under this paragraph (g).

(h) Company shall, prior to the Effective Time, take all actions necessary to terminate the employee stock purchase plan portion of Company's Global Stock Plan (such portion, the "Company ESPP") effective as of the Effective Time and all outstanding rights thereunder at the Effective Time. The offering period in effect as of immediately prior to the Effective Time shall end in accordance with the terms of the Company ESPP and each participant in the Company ESPP will be credited with the number of share(s) of Company Common Stock purchased for his or her account(s) under the Company ESPP in respect of the applicable offering period in accordance with the terms of the Company ESPP. The options to acquire Company Common Stock under the UK ShareSave Scheme of Company's Global Stock Plan (the "Company SAYE") shall be treated in accordance with Section 6 of the Company SAYE and, to the extent required thereunder to remain outstanding following the Effective Time and converted into the right to receive shares of Parent Common Stock in the same manner as provided in Section 1.5(a) or as otherwise required by applicable law.

1.6 Certificate of Formation and Limited Liability Company Agreement of the Surviving Company. At the Effective Time, the certificate of formation of Merger Sub shall, by virtue of the Merger, be amended and restated in its entirety to read as the certificate of formation of Merger Sub in effect immediately prior to the Effective Time, except that Item 1 thereof shall read as follows: "The name of the limited liability company is Countrywide Financial LLC," and as so amended, shall be the certificate of formation of the Surviving Company until thereafter amended in accordance with applicable law. The limited liability company agreement of Merger Sub, as in effect immediately prior to the Effective Time, shall be the limited liability company agreement of the Surviving Company until thereafter amended in accordance with applicable law and the terms of such limited liability company agreement.

1.7 Directors and Officers. The directors of Company and its Subsidiaries immediately prior to the Effective Time shall submit their resignations to be effective as of the Effective Time. The directors, if any, and officers of Merger Sub shall, from and after the Effective Time, become the directors and officers,

Source: BANK OF AMERICA CORP /DE/ S-4/A, March 27, 2008

EXHIBIT C
page 6 of 7

IN WITNESS WHEREOF, Company, Parent and Merger Sub have caused this Agreement to be executed by their respective officers thereunto duly authorized as of the date first above written.

COUNTRYWIDE FINANCIAL CORPORATION

By: /s/ Angelo R. Mozilo
Name: Angelo R. Mozilo
Title: Chairman and Chief Executive Officer

BANK OF AMERICA CORPORATION

By: /s/ Joe L. Price
Name: Joe L. Price
Title: Chief Financial Officer

RED OAK MERGER CORPORATION

By: /s/ Joe L. Price
Name: Joe L. Price
Title: Officer

*Signature Page to Agreement and Plan of Merger*

A-56

Source: BANK OF AMERICA CORP /DE/, S-4/A, March 27, 2008

Powered by Morningstar® Document Research℠


EXHIBIT C
page 7 of 7



Home . Locations . Contact Us . Help . Sign In

Search

### Newsroom

- Welcome to Bank of America's Newsroom
- Are You a Journalist?
- Press Kits
- Press Releases
- Prime Rate Information
- Speeches
- Visit Bank of America's Heritage Center
- Visit Bank of America's Newsroom in Spanish

# Bank of America Responds to Consumer Desire for Increased Transparency in Home Loan Process with Tools that Clarify Mortgage Terms and Foster Informed Homeownership

*Company Launches Bank of America Home Loans Brand, Reinforces Responsible Lending Practices*

CALABASAS, Calif., April 27 /PRNewswire/ -- Bank of America today introduced its Bank of America Home Loans brand at locations nationwide and unveiled new tools through which homebuyers and homeowners will find greater clarity in the home finance process. The Clarity Commitment™, a single, one-page loan summary clearly presents to borrowers their interest rate, terms and other details of the loan in plain language. The Bank of America Home Loan Guide is an interactive Web site that arms customers with the personalized information to prepare for homeownership and make informed home buying and refinance decisions.

(Logo: http://www.newscom.com/cgi-bin/prnh/20050720/CLW086LOGO-b )

"We met with thousands of customers and created tools that reflect the transparency they want in the home-buying process," said Barbara Desoer, president, Bank of America Home Loans. "Doing the right thing for our customers is the foundation of our brand promise to always be a responsible lender and help create successful homeowners, and these tools exemplify that promise."

### New Tools to Help Customers Make Informed Decisions

The Clarity Commitment is a simple one-page summary in straightforward language designed to make it easier for customers to understand terms of their loan. The summary includes information regarding interest rate, monthly payment, payment terms, and an explanation of closing costs and other loan information. Provided both at application and at closing, the Clarity Commitment document is available on most new purchase and refinance transactions, including traditional and government-backed loans.



EXHIBIT D
page 1 of 3

In addition, the company introduced the Bank of America Home Loan Guide as part of the new Bank of America Home Loans Web site (bankofamerica.com/homeloans). The unique interactive guide is designed to provide prospective homebuyers and existing homeowners looking to refinance with a personalized simulation of the home loan process. It helps consumers understand the criteria that drive lenders' decisions, steps they can take to be more successful in the search for the appropriate home loan, and how a home loan fits into their budget and total financial picture. By explaining key data inputs, highlighting "rules of thumb" and tips with each step, and providing context around the results, the easy-to-use guide gives consumers relevant, personalized information that helps them understand their options and make informed decisions.

"Purchasing a home is one of the biggest decisions an individual makes, and we take seriously our responsibility to educate customers and arm them with the information they need to make smart decisions," said Desoer. "Especially in this environment, it's important that consumers understand the true, comprehensive costs of homeownership so they can buy a home and enjoy it with confidence."

Bank of America Home Loans also introduced Flat Fee Mortgage Plus through the 6,100 Bank of America banking centers. A new mortgage product, Flat Fee Mortgage Plus has no application fee and one single closing fee that represents the lender and other fees required for third-party services. The product features a close-on-time guarantee and best value guarantee. Flat Fee Mortgage Plus will be available through additional channels in the future.

**Introducing Bank of America Home Loans**

==The Bank of America Home Loans brand represents the combined operations of Bank of America's mortgage and home equity business and Countrywide Home Loans, which Bank of America acquired on July 1, 2008.== The Countrywide brand has been retired.

Countrywide customers already have access to Bank of America's 6,100 banking centers, a coast-to-coast network of Bank of America Home Loans retail locations, and one of the nation's largest ATM networks. As the new brand becomes more visible through rebranded locations, account statements, marketing materials and advertising, customers should continue to use current methods for managing their accounts and contacting customer service until the full systems conversion later this year.

The company originates and services one out of every five mortgages in the country, representing a servicing portfolio of almost 14 million loans. During the first quarter of 2009, Bank of America funded $85 billion in first mortgages, helping more than 382,000 Americans purchase a home or refinance. More than $16

EXHIBIT D
page 2 of 3

April 27, 2009 10:40 AM

# Bank of America drops Countrywide name

## The lender rebrands its mortgage operations as its home-loan business enters what has traditionally been its busiest season.

(AP) - Bank of America Corp. has officially dropped the Countrywide Home Loans name as part of its integration of the mortgage lender, which was acquired last year.

Charlotte, N.C.-based Bank of America on Monday renamed its mortgage and home equity lending operations Bank of America Home Loans. The division incorporates Bank of America's previous lending businesses with those of Countrywide.

The rebranding is being completed Monday to coincide with the beginning of what is traditionally the busiest season for home buying and follows other back-office integration between the lending units, said Barbara Desoer, president of Bank of America Home Loans.

At the height of the housing market, Countrywide was the nation's largest lender and was heavily involved in subprime lending — loans given to customers with poor credit history. The housing market began to unravel in 2007 as subprime mortgage borrowers increasingly started to default, helping to spawn the credit crisis.

Loan losses have piled up for the company and lending volume is slowing, similar to what many lenders are facing during the ongoing recession and housing market downturn.

During the first quarter, the combined Bank of America and Countrywide mortgage operations funded $89 billion in mortgages and home equity loans. The pair combined to originate $315.33 billion in 2008 and $598.33 billion in 2007.

The new Bank of America Home Loans division will be based in Calabasas, Calif., which was home to Countrywide Financial Corp.

Bank of America agreed to acquire Countrywide in January 2008 in an all-stock deal worth about $4 billion at that time. The deal was valued at about $2.5 billion when the deal closed July 1 because of a drop in Bank of America's share price



EXHIBIT D
page 3 of 3

BANK OF AMERICA CORPORATION

CERTIFICATE OF ASSISTANT SECRETARY

The undersigned, Allison L. Gilliam, an Assistant Secretary of Bank of America Corporation, a Delaware corporation (herein the "Corporation"), does hereby certify that:

1. The following person has been duly elected or appointed and has duly qualified as an officer of the Corporation and she holds the office set forth opposite her name:

| Name | Title |
|---|---|
| Karen Hartford Polk | Assistant Vice President |

2. The following is a true and complete copy of Article IX, Section 1 of the Bylaws of said Corporation and the same is in full force and effect as of the date hereof:

Section 1. **Execution of Instruments.** All agreements, indentures, mortgages, deeds, conveyances, transfers, contracts, checks, notes, drafts, loan documents, letters of credit, master agreements, swap agreements, guarantees, certificates, declarations, receipts, discharges, releases, satisfactions, settlements, petitions, schedules, accounts, affidavits, bonds, undertakings, proxies and other instruments or documents may be signed, executed, acknowledged, verified, attested, delivered or accepted on behalf of the Corporation by the Chairman of the Board, the Chief Executive Officer, the President, any Vice Chairman, any Division President, any Managing Director, any Vice President, any Assistant Vice President, or any individual who is listed on the Corporation's Officer's payroll file in a position equal to any of the aforementioned officer positions, or such other officers, employees or agents as the Board of Directors or any of such designated officers or individuals may direct. The provisions of this Section 1 are supplementary to any other provision of these Bylaws and shall not be construed to authorize execution of instruments otherwise dictated by law.

IN WITNESS WHEREOF, I have hereupon set my hand and affixed the seal of the Corporation this 7th day of September, 2010.

(CORPORATE SEAL)

*Allison L. Gilliam*
Allison L. Gilliam
Assistant Secretary

EXHIBIT E
page 1 of 2



# LIMITED POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, that I,

Katherine S. Neeley, Vice President of Bank of America N.A. ("Bank of America"), acting on behalf of Bank of America hereby appoint Karen Polk, as Bank of America's lawful attorney-in-fact to seek recovery of the undistributed, unclaimed, or undelivered tenders of funds belonging to Bank of America or any of its entities or predecessors, held by the United States, by a state or local municipality, or by an agency or instrumentality of either, hereby revoking all previous powers of attorney in this regard to whomever granted.

Signed this 29 day of November, 2010

Bank of America N.A.
By _____
Katherine S. Neeley
Vice President

Affix Corporate Seal

Bank of America N.A.

Federal Taxpayer ID 94-1687665

State of North Carolina  County of Mecklenburg    November 29, 2010

The above-named Katherine S. Neeley known to me to be the individual described in [and holding the position designated in] the foregoing instrument, appeared before me and acknowledged the execution thereof to be his/her free act and deed.

(Notary Seal)

Before me _____
Notary Public

My commission expires: 3/28/2014

Bank of America, N.A., NC1-021-03-40
40) North Tryon Street, Charlotte, NC 28255

EXHIBIT E

page 2 of 2



Karen Hartford Polk
Assistant Vice President
Recovery Solutions
Recovery Officer

Tel: 704.387.5985 · Fax: 980.233.7721
karen.a.hartford@bankofamerica.com

Bank of America, NC1-023-15-01
525 North Tryon Street, Charlotte, NC





EXHIBIT F
page 1 of 1